HAMMOND ET AL., APPELLANTS, *v.* MOON ET AL., APPELLEES.

(No. 81AP-880—Decided September 2, 1982.)

*Mr. David L. Day,* for appellants.
*Messrs. Porter, Wright, Morris & Arthur, Mr. Charles T. Kurtz III,* and *Mr. William M. Todd,* for appellees.

WHITESIDE, P.J. Plaintiffs appeal from a judgment of the Franklin County Court of Common Pleas directing a verdict in favor of defendant Robert Moon at the close of plaintiffs' case. (Hereinafter, the singular "plaintiff" will refer to plaintiff Bernice Hammond, and the singular "defendant" will refer to defendant Robert Moon.) Plaintiffs raise three assignments of error in support of their appeal, as follows:

"1. The court erred in sustaining defendant's motion in limine and ordering that no testimony would be permitted by Bernice Hammond about use of handrails and excluding plaintiffs' exhibit 3, the Westerville Ordinance adopting the Ohio Building Code.

"2. The court erred in directing a verdict and granting judgment in favor of defendant, Robert Moon, on the ground that defendant, Robert Moon, had not assumed the duty of cleaning the snow and ice from the rear steps of the building.

"3. The court erred in directing a verdict and granting judgment in favor of defendant, Robert Moon, on the ground that plaintiff, Bernice Hammond, had assumed the risks."

Plaintiffs brought this action to recover damages for injuries sustained as a result of a fall by plaintiff Bernice Hammond in January 1977 on the back steps of the office building located in Westerville in which she worked. She had worked

at this location since prior to defendants' purchase of the two-story office building in 1973. The second floor contained an apartment occupied by one of the previous owners, while the first floor contained three office suites, one of which plaintiff worked in with her employer, Dr. Robert Strohl. A center hallway divided the two suites on the west side of the building from the one on the east side, in which plaintiff worked. There was a common front entrance opening into the center hallway, but which was used by neither plaintiff nor her employer for means of entry, it being locked at night and utilized only by clients and visitors to the offices. There were separate rear entrances opening onto a small back porch.

Leading from the porch was a single set of three wooden steps approximately forty inches wide containing a total of four rises approximately eight inches each. Although the steps had been reconstructed a few months before plaintiff's fall, no handrail had ever been installed for the steps.

Plaintiff's fall occurred as she was leaving work for the day through the rear door of the office building after having locked and secured the front door as was her custom pursuant to an arrangement with the previous owner. Considerable snow had fallen on the day in question: however, defendant had not caused the snow to be cleared from the rear steps, although he had assumed the duty of removing natural accumulations of snow and ice but did not always do so, at least with respect to the rear steps.

As plaintiff carefully traversed the porch and started to step down with her right foot onto the steps, her left foot slipped and she landed on the bottom step, with her full weight on her left leg, causing injury to her left knee.

The trial court sustained defendant's motion for a directed verdict upon two grounds: (1) that defendant had not assumed the duty of clearing the snow from the rear steps of the building; and (2)

that plaintiff had assumed the risk of injury by her own conduct.

Civ. R. 50 (A)(4) requires that the evidence be construed most strongly in favor of the party against whom a motion for a directed verdict is directed. When so construed, the trial court can properly direct a verdict only if it "finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to" the party against whom the motion is directed. Accordingly, in order to be entitled to have their case submitted to the jury, plaintiffs must have adduced sufficient evidence upon every element of actual negligence, or evidence of a fact upon which a reasonable inference may be made to support such element, as would permit reasonable minds to find in their favor. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282 [21 O.O.3d 177].

Actionable negligence is established by showing the existence of a duty which has been breached and injury proximately resulting therefrom. Since plaintiff was an employee of a tenant, defendant owed to her the same duty as a landlord owes to his tenants. Accordingly, defendant's duty in this case is well-stated in the second paragraph of the syllabus of *Davies* v. *Kelley* (1925), 112 Ohio St. 122, as follows:

"Where a porch and stairway leading thereto are provided, maintained, and controlled by a landlord for the use of several tenants of his building, and are thus used, he is, in general, liable for any injuries arising from his neglect to keep the same in proper repair; such duty and liability extend not only to the tenant himself, but also to members of his family, employees, guests, and invitees."

Despite the general duty of a landlord to tenants to keep common areas in repair, it is generally held that, under ordinary circumstances, the landlord has no duty to remove natural accumulations of snow and ice from common areas that remain under his control. See *Sidle* v. *Hum-*

*phrey* (1968), 13 Ohio St. 2d 45 [42 O.O.2d 96]. However, the landlord may assume such duty, and, when he does, he is required to exercise ordinary care to render common approaches reasonably safe for use by tenants. This rule is stated in the first paragraph of the syllabus of *Oswald* v. *Jeraj* (1946), 146 Ohio St. 676 [33 O.O. 162], as follows:

"The owner of an apartment building who reserves possession and control of the common approaches which provide ingress to and egress from such building to and from the public sidewalk and who assumes the duty of keeping such approaches clean and free from ice and snow is required to exercise ordinary care to render such common approaches reasonably safe for use by the tenants."

Of course, such assumption of duty may be by express agreement or created impliedly from a course of conduct.

Contrary to the finding of the trial court, there was sufficient evidence to permit reasonable minds to conclude that defendant had assumed the duty of clearing natural accumulations of snow and ice from the back steps if the evidence be construed most strongly in favor of plaintiffs. Defendant himself equivocated as to his assumption of duty, first testifying that he assumed the duty to remove snow and ice from the common areas, then limiting his testimony of assumption to the front steps and walk, then admitting that on his deposition he had indicated that he sometimes caused snow to be removed from the back steps and sometimes personally shoveled the snow, and lastly admitting that his secretary made the arrangements for snow removal, and that he had never instructed her not to have the back steps cleared of snow. Plaintiff's employer testified that the snow was usually removed from the back steps at the same time as snow was removed from the front by somebody whom he assumed was hired by the owner of the building. Plaintiff testified that the prior owner regularly caused snow to be removed

from the back steps but that defendant sometimes did and sometimes did not cause snow to be removed. There was no direct evidence of any instance of snow being removed from the front entrance area and not being removed from the rear. Plaintiff did testify that there was some salt available near the front door and that on some occasions she had spread some of this salt in the front entrance area so that patients could safely enter the building. Accordingly, there was sufficient evidence, if believed, and construed most strongly in favor of plaintiffs, to permit reasonable minds to reach the conclusion that defendant assumed the duty of clearing natural accumulations of snow and ice from the back steps of the office building. The trial court erred in weighing the evidence and reaching a contrary conclusion and directing a verdict in favor of defendant upon this issue. For this reason, the second assignment of error is well-taken.

The third assignment of error raises the issue of assumption of risk. The trial court's finding upon this issue is apparently predicated upon defendant's contention that plaintiff had an alternative means of exiting the building, which she did not utilize, through the front door.

As stated in *Briere* v. *Lathrop Co.* (1970), 22 Ohio St. 2d 166 [51 O.O.2d 232], at pages 174-175:

"* * * Assumption of the risk requires three elements: One must have full knowledge of a condition; such condition must be patently dangerous to him; and he must voluntarily expose himself to the hazard created. * * *"

Construed most strongly in favor of plaintiffs, reasonable minds could reach different conclusions upon these three elements of assumption of risk.

While the evidence indicates that plaintiff knew it had snowed that date, there is no direct evidence that she was aware that defendant had failed to cause the back steps to be cleared of snow and ice until after she exited from the rear

door of the building onto the porch on her way home. At this point, plaintiff was aware of the existence of the snow and ice on the steps, as well as the absence of a handrail. Plaintiff testified to the effect that she appreciated the danger involved and proceeded "cautiously." As we will discuss in connection with the first assignment of error, further evidence as to how she proceeded was precluded by a pretrial motion *in limine.*

Even assuming that there was full awareness of plaintiff as to the existence of a patently dangerous condition, reasonable minds could reach different conclusions as to whether she voluntarily exposed herself to that hazard if the evidence be construed most strongly in her favor. Clearly, plaintiff was entitled to go home after work and was not required to remain in the office until such time as defendant finally caused the snow and ice to be removed from the back steps, assuming the trier of the facts finds he had such a duty. Thus, the basic issue is whether or not plaintiff had readily available a reasonably safe alternative means to utilize in leaving the building in order to go home. Thus, as stated in *Mizenis* v. *Sands Motel, Inc.* (1975), 50 Ohio App. 2d 226 [4 O.O.3d 184], at page 231, with respect to a motel guest:

"A motel guest's acceptance of a risk is not to be regarded as voluntary where the innkeeper's tortious conduct had forced upon him a choice of courses of conduct which leaves him no reasonable alternative to taking his chances. * * * The same is also true where the guest is compelled to accept the risk in order to exercise or protect a right or a privilege of which the innkeeper has no right or privilege to deprive him. A motel guest does not assume the risk of his innkeeper's negligence in maintaining a common passageway when it is the only exit from the premises."

Construed most strongly in favor of plaintiff, there was evidence that the rear entrance was the only available means of exit for plaintiff. She testified that she never had a key to the front door. In addition, the prior owner had specifically asked her to lock the front door by means of a dead-bolt lock before leaving for the day in order to secure the building. While this instruction was not made by her employer or repeated by defendant, plaintiff had followed the same course of conduct for approximately ten years and had never been given a key to the front door. Her employer testified that he also had never been given a key to the front door and almost always used the rear door as a means of exit but that he would assume no duty to secure or lock the front door. Reasonable minds could conclude from the evidence that plaintiff reasonably felt that she had no choice but to exit through the rear doorway, onto the porch and down the back steps.

In addition, there is no evidence that, on the day in question, exit through the front door and down the front steps constituted a safe means of exit for plaintiff. There is no evidence that the front steps or walk were cleared of snow and ice on the day in question, while there was evidence that ordinarily both the front and back steps were cleared at the same time. While the evidence does show the existence of a handrail with the front steps, and there is some indication that the overhang of the roof may have protected the front steps from some of the snowfall, there is no direct, much less conclusive, evidence that the front steps were clear and safe on the day in question. In addition, plaintiff testified that, although it was not her job, on occasion, she felt it necessary to spread salt on the front entranceway in order to afford a safe entrance for patients. In any event, there is no evidence requiring a finding that plaintiff Bernice Hammond knew that exit by the front door was both available and completely safe; whereas, exit through the rear door was hazardous. Reasonable minds could reach different conclusions upon these issues when the evidence is

construed in favor of plaintiffs. Accordingly, the trial court erred in finding assumption of risk as a matter of law, and the third assignment of error is well-taken.

The first assignment of error raises an issue of the sustaining by the trial court of defendant's pretrial motion *in limine*, thereby prohibiting any testimony as to the Westerville ordinance adopting the Ohio Building Code requiring a handrail, as well as to whether the use of such a handrail would have prevented plaintiff's fall.

Plaintiff contends that defendant had a duty to install a handrail on the back stairs under the Westerville ordinance adopting the Ohio Building Code, and defendant has not expressly contested this contention. However, defendant filed a motion *in limine* requesting an order "forbidding plaintiffs to introduce evidence material to the issue of the absence of a handrail on the flight of steps involved in this action." The trial court, in granting that motion, expressly relied upon *Renfroe* v. *Ashley* (1958), 167 Ohio St. 472 [5 O.O.2d 154], in which the Supreme Court found that the evidence adduced was too speculative for submission of the issue of whether the failure to install a handrail was the proximate cause of the injured party's fall down the steps. The syllabus in *Renfroe* states in part that a plaintiff seeking damages from a fall on a stairway:

"* * * on the basis that such fall and accompanying physical injuries were directly attributable to the negligence of the defendant in not providing a handrail * * * it is still incumbent on the plaintiff in order to recover * * * to adduce evidence from which reasonable minds can reach the conclusion that such negligence was the proximate cause of the fall and injuries, and, where the evidence is so meager and inconclusive on that point that a finding of proximate cause would rest solely on speculation and conjecture, it is proper for the trial court, on motion, to direct a verdict for the defendant."

The trial court's reliance on *Renfroe* was clearly misplaced since, in sustaining the motion *in limine*, the trial court expressly precluded plaintiff from any opportunity "to adduce evidence from which reasonable minds can reach the conclusion" that defendant's negligence in not providing a handrail "was the proximate cause of the fall and injuries." Plaintiff cannot sustain this burden of adducing sufficient evidence to prove an issue, where the trial court prior to trial precludes the plaintiff from submitting any evidence upon the determinative issue. Proper use of a motion *in limine* is to preclude any evidence of a certain nature which is inherently prejudicial and inadmissible without a proper foundation being established, until such time as the trial court, through a voir dire examination or otherwise, may determine during the course of the trial the admissibility of the evidence. A motion *in limine* ordinarily is not a substitute for a motion to suppress evidence and is not a means of determining the admissibility of evidence. Under some circumstances, a motion *in limine* may determine the competency of evidence and may preclude any evidence upon an issue as to which there is no possibility of any evidence being properly admissible. Here, no such circumstance is involved. As clearly mandated by *Renfroe*, plaintiff is entitled to an opportunity to adduce evidence to establish that the absence of a handrail was a proximate cause of her fall and resulting injuries. The trial court improperly denied plaintiff this opportunity.

In addition, plaintiff's counsel's outline of what he expected her testimony to demonstrate presented in connection with the motion *in limine* is decidedly different from the speculative evidence in *Renfroe*. In that case, the cause of the plaintiff's fall was left to mere conjecture; whereas, in this case, the evidence clearly shows that plaintiff slipped and fell because of

snow and ice. See *Haarmeyer* v. *Roth* (1960), 113 Ohio App. 74 [17 O.O.2d 231]. In addition, in *Renfroe,* the plaintiff testified not that the presence of a handrail would have prevented her fall but, instead, that the presence of the handrail would have broken the continuation of her fall. Plaintiff's "proffer" clearly indicates that she would have testified that the availability of a handrail would have prevented her from falling. At the very least, plaintiff was entitled to an opportunity to present sufficient evidence to permit the jury to find that the absence of the handrail was a proximate cause of her fall and resulting injury. The trial court erred in sustaining the motion *in limine,* and the first assignment of error is well-taken.

Plaintiffs have raised certain other contentions of negligence which have not been raised as a specific assignment of error. These include the absence of a light, which defendant attempts to utilize as another basis for assumption of risk, as well as some reference to the frequenter statute, R.C. 4101.11 and 4101.12. None of these issues was considered in the trial court and they have not been raised by specific assignment of error, making it inappropriate to consider them upon this appeal at this time, inasmuch as none of these issues would change the result.

Accordingly, for the foregoing reasons, all three assignments of error are sustained; and the judgment of the Franklin County Court of Common Pleas is reversed; and this cause is remanded to that court for further proceedings in accordance with law consistent with this decision.

*Judgment reversed and*
*cause remanded.*

MCCORMAC and MOYER, JJ., concur.