CITY OF CINCINNATI *v.* CONTEMPORARY ARTS CENTER.

CITY OF CINCINNATI *v.* BARRIE.

16

(Nos. 90CRB11699-A & B and
90CRB11700-A & B—Decided
September 6, 1990.)

Hamilton County Municipal Court.

*Richard A. Castellini,* city
solicitor, *Frank H. Prouty, Jr.,* senior
assistant city prosecutor, and *Melanie
J. Reising,* assistant city prosecutor,
for the state of Ohio.

*Marc D. Mezibov,* for Contemporary Arts Center.

*H. Louis Sirkin,* for Dennis Barrie.

F. DAVID J. ALBANESE, J. For purposes of these decisions the court has consolidated the motion *in limine* filed by the state of Ohio and the motion to dismiss the second count of the indictment filed by the defendants, the Contemporary Arts Center ("CAC") and Dennis Barrie ("Barrie"). The court will first address itself to the issue raised by the defendants that Count Two of the indictment should be dismissed because the defendants have not violated R.C. 2907.32[1] as a matter of constitutional law.

There is no question that *Miller* v. *California* (1973), 413 U.S. 15, sets out the standard for determining whether material is obscene. The three-pronged *Miller* test is as follows:

a. Whether the average person applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;

b. Whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

c. Whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *Id.* at 24.

All of these requirements are issues of fact for the jury to determine, not the court's by intervention as a matter of constitutional law. See *Pope* v. *Illinois* (1987), 481 U.S. 497.

The legal arguments regarding the

---

[1] R.C. 2907.32 provides:

"(A) No person * * * shall do any of the following:

"* * *

"(2) Promote * * *, * * * display, [or] exhibit * * * any obscene material[.]"

application of the phrase "taken as a whole" are discussed elsewhere in this decision.

The defendants also jointly argue that R.C. 2907.32 requires that the charges should be dismissed. This argument combines facts, affirmative defenses, and issues of credibility. This court will not pre-try the case on those issues. See *State* v. *McNamee* (1984), 17 Ohio App. 3d 175, 17 OBR 306, 478 N.E. 2d 843.

In addition, the defendants argue that R.C. 2907.32 is unconstitutionally vague and overbroad. This very issue was decided in *State* v. *Loshin* (1986), 34 Ohio App. 3d 62, 517 N.E. 2d 229.[2] For the foregoing reasons, the defendants' motion to dismiss Count Two is denied.

## II

The state of Ohio has filed a motion *in limine* for an order instructing the defendants to refrain from making any direct reference to, or offering as evidence, any pictures or photographs not contained and alleged in the second count of the indictment.

Generally, a motion *in limine* in Ohio has been approved as a legitimate means of limiting the introduction of testimony and/or evidence at trial. As stated in *State* v. *Grubb* (1986), 28 Ohio St. 3d 199, 28 OBR 285, 503 N.E. 2d 142, paragraph one of the syllabus:

"The effect of the granting of a motion *in limine* in favor of the state in a criminal proceeding is to temporarily prohibit the defendant from making reference to evidence which is the subject of the motion."

The basic function of the motion is precautionary in an effort to avoid error, prejudice and possibly a mistrial until the trial court is better able to rule on its admissibility outside the presence of a jury once the trial has commenced. *Id.* at 201, 28 OBR at 287, 503 N.E. 2d at 145. See, also, *Hammond* v. *Moon* (1982), 8 Ohio App. 3d 66, 8 OBR 97, 455 N.E. 2d 1301; *Rinehart* v. *Toledo Blade Co.* (1985), 21 Ohio App. 3d 274, 21 OBR 345, 487 N.E. 2d 920. Additionally, authority for the court to grant or deny said motion is within the inherent power and discretion of the trial court to control its proceedings. See Evid. R. 103(A) and 611(A). The defendants' rights are protected by a proffer made to the court at the proper time.

There are five separate photographic images that require a determination of what constitutes "the whole"; this court must decide whether all the pictures in the exhibition are to be judged as a unit, or if each of the five pictures in the indictment should be judged separately.

It should remain clear in this decision that no inference is made concerning the issues of obscenity. Clearly, then, what constitutes the "taken as a whole" decision will only result in a temporary protective order at trial.

CAC is organized as a nonprofit corporation under the laws of the state of Ohio. Further, it appears that a contract for valuable consideration was agreed to by the CAC with the trustees of the University of Pennsylvania for display of the Robert Mapplethorpe exhibition. It is also noted that admission to view the exhibit was by payment of a fee. It is apparent, therefore, that commercial considerations entered into the decisions of the defendants to display the photographs to the public. The defendants have gone to great lengths to demonstrate that the art gallery has a proper interest in display-

---

[2] The Ohio statutory scheme for the control of obscenity is constitutional when the guidelines of *Miller* v. *California* (1973), 413 U.S. 15, 24, are incorporated in the statutory scheme. *State* v. *Loshin, supra.*

ing the photographs in question. The court agrees that the CAC has tax-exempt status, a professional staff of thirteen persons, and a Board of Trustees of thirty prominent Hamilton County citizens. There's no dispute that both the CAC and its staff belong to many professional, educational and civic organizations and associations. The court believes, then, that the defendants have demonstrated a continuous duty and trust to the public in pursuing the cultural enterprise.

### III

The state's contention is that by displaying the photographs for viewing, visual images of each photograph are certainly important. A "photograph," by way of definition, is "material capable of arousing interest through sight." R.C. 2907.01(J).[3] Each photograph has to be a unique experience of visual portrayal. A photograph stands alone within the four corners of its framework. A photograph makes an immediate impression; as instantly as one can blink the eye, the mind, while looking at a photograph, determines the beginning, middle, and end of that photograph. A photograph is independently appraised, bartered or sold. Each photograph in its own separate way has its own integrity, like it or not.

In dealing with photographs displayed in an art gallery, this court must follow general guidelines on the issue of the meaning of the phrase "taken as a whole" because neither the Supreme Court of Ohio nor the Supreme Court of the United States has decided this issue. For example, the United States Supreme Court in *Kois* v. *Wisconsin* (1972), 408 U.S. 229, 231, said that the reviewing court must "* * * look at the context of the material, as well as its content." But *Kois* dealt with the issues of "sex poems" as published in an underground newspaper; pictures were not involved at all in that case. Attempting to apply the "content" and "context" rule to pictures is questionable; the pictures speak for themselves. The content of a picture may be the content itself. The picture itself can be out of context if it is blurred or cut or discolored, thereby distorting the substance and arrangement of its content. The context of an exhibit is illusive as it changes by design.

The court is not unmindful of the fact that "ratiocination has little to do with esthetics, the fabled 'reasonable man' is of little help in the inquiry, and would have to be replaced with, perhaps, the 'man of tolerably good taste' — a description that betrays the lack of an ascertainable standard. * * *"[4] But we, as a civilized nation, do have principles and guidelines.

The court has carefully heard all the testimony of the witnesses in the evidentiary hearing, and has reviewed the exhibits, arguments and briefs of counsel; an effort is made, then, to decide whether all the pictures, taken as a whole, and displayed in an art gallery, must be judged as one indivisible unit, or if each individual photograph must be judged separately.

### IV

The defendants adroitly formulate the contention that the Robert Mapplethorpe "Perfect Moment" exhibition is necessarily non-obscene; the grand jury chose only to indict the defendants with pandering five photo-

---

[3] That section provides: " 'Material' means *any* book, magazine, newspaper, pamphlet, poster, print, *picture,* figure, image, description, motion picture film, phonographic record, or tape, or other tangible thing capable of arousing interest through sight, sound or touch." (Emphasis added.)

[4] *Pope* v. *Illinois* (1987), 481 U.S. 497, 505 (Scalia, J., concurring).

graphs as obscene.[5] Therefore, since the exhibition — the whole — is non-obscene, it is undeniable, the defendants urge, that the five photographs are parts of the whole, and also have to be non-obscene.[6]

This presumption, however, is rebuttable since the defendants failed to appreciate the liability inherent within the four corners of each photograph. The defendants have anticipated and inferred that the legal focus of the phrase "taken as a whole" is the comparison of each photograph to *all* of the photographs in the exhibit. This theory could result in a finding that the entire exhibit would be obscene if the evidence shows that the "five S & M" photos are, indeed, obscene.

This court finds that each photograph has a separate identity; each photograph has a visual and unique image permanently recorded. The click of the shutter has frozen the dots, colors, shapes, and whatever finishing chemicals necessary, into a manmade instant of time. Never can that "moment" be legitimately changed.

But the defendants press for the rationalization that an exhibition curator is a professional and has the ability and credentials to present a retrospective show of an artist's work. The claim is that there is an absolute right to present any work by any artist. The defendants are outraged that the quality and historical significance of the photographs are distinguished in the indictments. The claim is that all the photographs are inseparable and should be "taken as a whole" to determine the basis for artistic quality and scrutiny. The state is concerned about pictorial manipulation — the use of discretion without guidelines.

The court finds that the photographs have been individually collected from private owners and public institutions; each photograph exists as a single presentation or work. A retrospective exhibition is the accumulation of important impressions of an artist's work over the years to demonstrate a productive lifespan by showing breadth, diversity, expression, sequence, quality, and perfection. However, the court finds the exhibition itself to be a *vehicle* for displaying the "five S & M" pictures. It is unnecessary to pretend that the "five S & M" pictures have appeared anywhere else by themselves, individually, in any other art gallery; this exhibition is the first.

In deciding this matter, therefore, the court will systematically attempt to do so without succumbing to the subjective tests so often criticized.

First, the "five S & M" pictures are "coat-tailed" with one hundred sixty-eight non-obscene pictures in the exhibition, but the "five S & M" pictures are displayed in separate arrangements.

Second, the curator explained that even *without* the "five S & M" pictures, the exhibition probably would have been arranged retrospectively for viewing to the public. The "whole" would be reduced by five and, therefore, would result in a change from the original exhibition.

Third, the accompanying catalogue containing a checklist of the contents of the exhibition was prepared by the same curator; the catalogue and the exhibition purported to be the same with one exception — the "five S & M" pictures are absent from the catalogue. The indispensable "five S & M" pic-

---

[5] The grand jury did view the entire exhibit before voting for an indictment.

[6] The five photographs of the indictments have been referred to by the curator of the exhibit as sadomasochistic photographs and given the abbreviation of "S & M." The court, therefore, will refer throughout this decision to the photographs as being the "five S & M" photographs.

tures to be included in "the whole" were deleted from the catalogue book because of "budget restraints and esthetic design composition." This is a change by design.

Fourth, continuing the objectivity test, the court cannot help but notice that the nude pictures of the two minor children are necessarily isolated because of legal precedent. The Supreme Court has doggedly insisted that government has a legitimate interest in the protection of minors. The tests for obscenity in cases involving minors are different. See *New York* v. *Ferber* (1982), 458 U.S. 747.[7] In other words, the pictures in the exhibition to be "taken as a whole" do not include the pictures of the nude children. This reduces the total number of pictures in the original exhibit by two; therefore, making it not entirely retrospective.

In conclusion, when finding that *each* photograph is a whole image, the focus will be each picture "taken as a whole." Arranging photographs within an exhibition to claim a privilege of acceptability is not the test; the "whole" is a single picture, and no amount of manipulation can change its identity. To argue that possible obscene photographs as displayed are nevertheless non-obscene because they are part of an otherwise acceptable exhibit is rejected.

To rule otherwise would allow displays of such incongruity that imagination would be the only guideline for the arranging of a flagrant display resulting in a cultural calamity. It matters not whether there is a commercial market or an audience at the art gallery. In this court's judgment, independent evaluation of the "five S & M" photographs is required. To paraphrase the concurring opinion of Judge Clark in *Penthouse Internatl., Ltd.* v. *McAuliffe* (C.A. 5, 1980), 610 F. 2d 1353, 1373, it becomes apparent that the state should not be required to deal with such an "overboard interpretation" of the phrase "taken as a whole" that it would render the standards for prosecution in obscenity cases unworkable.

This case is set for trial on both counts of the indictments against both defendants on September 24, 1990. The "five S & M" photographs will be individually "taken as a whole," each measured against the *Miller* obscenity standards by the trier of the facts. The state's motion *in limine* is granted and a temporary protective order is issued.

*So ordered.*

IN RE DOE, A.K.A. S.H.

---

[7] "The test for child pornography is separate from the obscenity standard enunciated in *Miller* [v. *California* (1973), 413 U.S. 15], but may be compared to it for the purpose of clarity. The *Miller* formulation is adjusted in the following respects: A trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the *material at issue need not be considered as a whole. * * *"* (Emphasis added.) *Ferber, supra,* at 764.