In this appeal from an order granting summary judgment in favor of defendant/appellee CFA Medical Building and Garage, plaintiff/appellant Erdine Shupe Burton contends that the case presents issues of fact warranting trial: namely, whether the "black ice" on which she slipped in the defendant's parking garage was an unnatural accumulation of ice or, alternatively, whether the "black ice" resulted from the negligent performance of a duty assumed by the defendant. We conclude that there were no genuine issues of material fact and that defendant was correctly awarded judgment as a matter of law. Accordingly, we affirm.
The facts presented below reflect that plaintiff drove home from work at or around 7:00 a.m. on April 2, 1996 and then prepared to go to her 8:30 a.m. medical appointment at the Fairview Hospital Medical Building in Cleveland, Ohio. (Burton Depo. at 20-23.) Plaintiff acknowledged that she was "very aware" of the outdoor weather conditions that morning:
 It had been rainy the night before, and it got very cold. It froze over and it was treacherous driving. It was very cold, and all the water that had been there from the night before and during the night was froze. It was black ice conditions.
(Burton Depo. at 21-22.)
After telephoning her doctor's office from her car to report that she was going to be a few minutes late, plaintiff arrived for her appointment at about 8:30 a.m. and parked her van in the first available parking space which she found on the third floor of the garage adjoining the medical building. (Burton Depo. at 21, 25-26.) Plaintiff parked her van facing north in a partially exposed area that was "open to outside" where "all the wind and stuff comes from the north there" and "any weather going on outside * * * can blow into the building." (Burton Depo. at 27-28.) While driving through the garage, plaintiff had noticed that the pavement appeared wet from being tracked in by other cars, but she did not notice whether the pavement where she parked was wet. (Burton Depo. at 28-30.)
After exiting her van, plaintiff walked between her van and an adjacent parked car. (Burton Depo. 30.) Plaintiff testified that she "was walking slowly and carefully and watching, because it looked like, you know, it could be slippery, and it felt a little — you know, not like when it's totally dry and you can feel there's something, that little movement * * *." (Burton Depo. at 32.) She noticed that the pavement "didn't look like dry, gray concrete. It had that like it could have been wet or some icy look at this time to it." (Burton Depo. at 33.) Plaintiff acknowledged that she expected black ice conditions because she had "been out in it all morning. It was no surprise." (Burton Depo. at 33-34.)
Plaintiff took about four steps and was about to turn right at the rear of the car parked next to her van when she was startled to hear a loud horn honk to her left. (Burton Depo. at 30-36.) She suddenly looked in that direction and, as she was taking another step, her feet went out from under her and she fell to the ground. (Ibid.) She then saw black ice "all over and behind the car." (Burton Depo. at 36.) She deduced that the ice resulted from the weather conditions earlier that morning because the area was open to the elements and was on an incline. (Burton Depo. at 36-38.) She did not know how long the ice had been there before she fell or if anyone else fell before her. (Burton Depo. at 47, 50.) A witness helped plaintiff to her feet, and plaintiff went to her scheduled medical appointment.
The defendant's employee, Jonathan Bias, testified that he usually completed his daily inspection of the garage by 8:45 a.m. (Bias Depo. at 15-16, 26.) His typical inspection consisted of checking for ice or snow throughout the garage and spreading salt or clearing snowy conditions where they appear, which was generally on the garage's ground and seventh or top floors. (Bias Depo. at 15-17.) The employee testified that he was not aware of black ice in the area where plaintiff fell at any time before the plaintiff reported that she fell. (Bias Depo. at 17-27.)
Moving for summary judgment, defendant asserted that it was not liable for failing to remove natural accumulations of ice or snow in its parking lot or for failing to warn a business invitee like plaintiff of the condition of its lot. The court below granted the motion, and plaintiff now presents a single assignment of error:
 I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.
The assignment of error is not well taken.
We review the trial court's granting of summary judgment de novo in accordance with the standards set forth in Ohio Civ.R. 56 (C). N. Coast Cable L.P. v. Hanneman (1994), 98 Ohio App.3d 434,440. To obtain a summary judgment under Civ.R. 56 (C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall (1997), 77 Ohio St.3d 421,430. If the moving party discharges this initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See alsoMitseff v. Wheeler (1988), 38 Ohio St.3d 112. A summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. State ex rel. The V Cos. v. Marshall (1998), 81 Ohio St.3d 467,473; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327.
In this case, the defendant maintained that the black ice on which plaintiff slipped constituted a natural accumulation of ice and snow and that the defendant was under no legal duty to remove such natural accumulations or to warn invitees of the dangers associated with such conditions. The Supreme Court of Ohio has said:
 In Ohio, it is well established that an owner or occupier of land ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow from the private sidewalks on the premises, or to warn the invitee of the dangers associated with such natural accumulations of ice and snow.
Brinkman v. Ross (1993), 68 Ohio St.3d 82, 83. These conditions are sufficiently well known in this region so that invitees may reasonably be expected to recognize and guard against them. Id. See also Sidle v. Humphrey (1968), 13 Ohio St.2d 45; Debie v.Cochran Pharmacy-Berwick, Inc. (1967), 11 Ohio St.2d 38. The same rule applies when "black ice" is present. See Karcher v. ZeislerMorgan Properties, Ltd. (Dec. 26, 1996), Cuyahoga App. No. 70199, unreported; Valentino v. Denny's Restaurant (June 6, 1996), Cuyahoga App. No. 70087, unreported; Jent v. Henehan (Nov. 4, 1991), Clermont App. No. CA91-03-023, unreported.
Acknowledging this general rule, plaintiff first contends that the black ice on which she slipped was not a natural accumulation caused by ordinary weather conditions but rather was an unnatural accumulation that was tracked in by vehicles. In Porter v. Miller
(1983), 13 Ohio App.3d 93, the court explained the distinction between natural and unnatural snow accumulations this way:
 "Unnatural" accumulation must refer to causes and factors other than the inclement weather conditions of low temperature, strong winds and drifting snow, i.e., to causes other than the meteorological forces of nature. By definition, then, the "unnatural" is the man-made, the man-caused; extremely severe snow storms or bitterly cold temperatures do not constitute "unnatural" phenomena.
Id., 13 Ohio App.3d at 95 (emphasis in original).
We do not agree that the condition described by plaintiff constituted an "unnatural" accumulation of ice. Wet or otherwise slippery conditions are not considered "unnatural" simply because they have been tracked in from the outside by other patrons. SeePaschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203;Boles v. Montgomery Ward Co. (1950), 153 Ohio St. 381; Keiserv. Giant Eagle, Inc. (1995), 103 Ohio App.3d 173. However, plaintiff acknowledged that the condition in this exposed area of the garage probably resulted from the weather conditions that morning. (Burton Depo. at 36-38.) We see no evidence in this record to dispute that the condition plaintiff encountered resulted from a natural accumulation of ice and snow.
Plaintiff alternatively argues that the defendant assumed the duty to remove ice and snow by having its employee conduct a daily inspection of the garage and that issues of fact exist as to whether the employee was negligent in failing to correct the black ice condition. We disagree. Property owners who gratuitously inspect their premises do not thereby expose themselves to liability for natural accumulations of ice and snow so long as they do not negligently create a condition that is more dangerous than would have been the case had the property been left in its original state. See Community Ins. Co. v.McDonald's Restaurants of Ohio, Inc. (Dec. 11, 1998), Montgomery App. Nos. 17051, 17053, unreported; Strazinsky v. Tri-CountyProperties, Inc. (May 15, 1997), Cuyahoga App. No. 71015, unreported; Young v. Ameritrust Company (Aug. 17, 1995), Cuyahoga App. No. 68618, unreported.
Moreover, contrary to plaintiff's suggestion, the evidence, even when construed most strongly in her favor, does not indicate that she fell after the inspection was completed. The evidence showed that she fell at or around 8:30 a.m. and that the defendant's employee typically completed his daily inspection of the garage by 8:45 a.m. In any event, nothing in the record suggests that the defendant caused this condition or that it otherwise had notice, actual or constructive, of a condition that was substantially more dangerous than an invitee should reasonably anticipate.
Plaintiff's reliance on cases arising from a landlord-tenant relation under which the landlord assumed the duty of clearing its walkways of ice and snow is misplaced. See, e.g., Oswald v.Jeraj (1946), 146 Ohio St. 676; Hammond v. Moon (1982), 8 Ohio App.3d 66;Kwait v. John David Management Co. (1974), 42 Ohio App.2d 63. In Sidle v. Humphrey, supra, the Supreme Court of Ohio distinguished Oswald when it held as follows:
 The common-law duty, owed by a landlord to a business invitee of his tenant who is on a portion of the premises over which the landlord has retained control, is no greater than the common-law duty that any other occupier of premises would owe to his business invitee. (Oswald v. Jeraj, 146 Ohio St. 676, explained and distinguished.)
Sidle v. Humphrey, supra, syllabus at paragraph 4. Accordingly, cases involving a landlord-tenant relationship are not controlling here.
We do not discern any material issues of fact to dispute that plaintiff slipped on a natural accumulation of ice on defendant's premises. On this record, we conclude that the trial court correctly rendered summary judgment in favor of the defendant. The judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J. and JOHN T. PATTON, J., CONCUR.
 ___________________________________ DIANE KARPINSKI JUDGE