DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant Wanda F. Coleman has appealed from a decision of the Summit County Court of Common Pleas that granted Defendant-Appellee Akron Board of Education's motion for summary judgment. This Court affirms.
 I {¶ 2} On October 1, 2002, Appellant Wanda F. Coleman filed suit against Appellee Akron Board of Education[1] claiming that she suffered serious injuries as a result of a fall that occurred on January 25, 2000. Appellant alleged that on January 25, 2000, she was transporting her children to Stewart Elementary School located at 1199 Wooster Avenue, Akron, Ohio, when she fell on a patch of ice located on the school grounds of the school. She claimed that Appellee was negligent, wanton and/or reckless in creating the condition of the school grounds and parking lot.
 {¶ 3} Appellee responded to Appellant's claim by filing an answer and a motion for summary judgment, wherein it alleged that there was no genuine issue of material fact because Appellant failed to explain how she fell, and thus failed to show that Appellee's alleged negligence was the proximate cause of her injuries. Appellant filed a response.
 {¶ 4} On May 13, 2003, the trial court granted Appellee's motion for summary judgment. The trial court concluded that there was no evidence that the snow located in the parking lot of Stewart Elementary School was an "unnatural accumulation" of snow and ice, and there was no evidence that the school personnel created or aggravated the ice hazard.
 {¶ 5} Appellant has timely appealed, asserting one assignment of error.
 II Assignment of Error
"The Trial Court erred in granting [appellee's] motion for summary judgment."
 {¶ 6} In Appellant's sole assignment of error, she has argued that the trial court erred in granting Appellee's motion for summary judgment. This Court disagrees.
 {¶ 7} The appropriate appellate standard of review for an award of summary judgment is de novo. Doe v. Shaffer (2000), 90 Ohio St.3d 388,390, citing Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. Brownv. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Thus, this Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Civ.R. 56(C); Viockv. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12, quoting Norris v.Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2.
 {¶ 8} According to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewed most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the non-moving party. See State ex rel. Howard v. Ferreri
(1994), 70 Ohio St.3d 587, 589.
 {¶ 9} To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine issue" exists to be litigated for trial. State ex rel.Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 10} Civ.R. 56(C) provides an exclusive list of materials which the trial court may consider on a motion for summary judgment. Spier v.American Univ. of the Caribbean (1981), 3 Ohio App.3d 28, 29. Specifically, the materials include: affidavits, depositions, transcripts of hearings in the proceedings, written admissions, written stipulations, answers to interrogatories, and the pleadings. Civ.R. 56(C).
 {¶ 11} In determining whether the trial court erred in granting Appellee's motion for summary judgment, this Court must first determine whether there exists a genuine issue as to whether Appellee owed a duty to Appellant, and if a duty was owed, whether Appellee breached that duty.
 {¶ 12} Generally, a landowner has no duty to remove natural accumulations of snow or ice, and therefore is not liable for injuries caused as a result of the snow or ice. See LaCourse v. Fleitz (1986),28 Ohio St.3d 209, 210; Sidle v. Humphrey (1968), 13 Ohio St.2d 45, paragraph three of the syllabus. However, there are two exceptions to this general rule. The duty to remove natural accumulations of snow or ice can arise when (1) the landowner has superior knowledge of the dangerous circumstances created by the snow or ice, see Chatelain v. Portage ViewCondos (2002), 151 Ohio App.3d 98,100; Klein v. Ryan's Family Steakhouse
(May 15, 2002), 9th Dist. No. 20683, 2002-Ohio-2323, at ¶ 14;Goodwill Indust. of Akron v. Sutcliffe (Sept. 13, 2000), 9th Dist. No. 19972, at 7; Zwick v. Cashelmara Condominium Assn. (July 22, 1999), 8th Dist. No. 7447, 1999 Ohio App. LEXIS 3383, at *5; or (2) the duty is created by express contract, see LaCourse, supra at 211; Wade v. LorainMetro. Housing Authority, Inc. (Sept. 11, 1991), 9th Dist. No. 90CA004954, at 5; Hammond v. Moon (1982), 8 Ohio App.3d 66, 68; Mitchellv. Parkridge Apts., Ltd., 8th Dist. No. 81046, 2002-Ohio-5357, at ¶ 20; Williams-Woge v. Greenbriar Commons Condominium Owners Assn. (Sept. 1, 1994), 8th Dist. No. 65771, 1994 Ohio App. LEXIS 3907, at *8.
 {¶ 13} In addition, a duty to remove snow or ice may arise if the accumulation is the result of an unnatural force (i.e., man-made). In such a case, the landlord can be held liable for failure to employ ordinary care in removal of the snow or ice. See Owens v. French VillageCompany (Aug. 18, 1999), 9th Dist. No. 98CA0038, at 4-5; Gyulay v.Rolling Acres Management, Inc. (June 2, 1982), 9th Dist. No. 10356, at 3; Sutcliffe, supra at 4-5. "Salting or shoveling does not turn a natural accumulation into an unnatural accumulation." Cunnigham v. ThackerServs., 10th Dist. No. 03AP-455, 2003 Ohio App. LEXIS 5398, at *10.
 {¶ 14} In the case sub judice, Appellant argued in her motion for summary judgment, as she now does on appeal, that Appellee had a duty to remove the snow and ice even though it was a natural accumulation of precipitation because it had superior knowledge of the dangerous circumstances created by the snow and ice. Appellant did not attempt to argue that Appellee's duty arose because Appellee contracted to remove the snow and ice or because the snow and ice was an unnatural accumulation. Thus, based on Appellant's arguments, any duty Appellee owed to her arose because Appellee had "superior knowledge" of dangerous conditions posed by the ice in the parking lot. The phrase "superior knowledge" refers to a landowner's knowledge relating to a danger that is "greater than that which would ordinarily be anticipated from a natural accumulation of ice and snow or where the accumulation itself is unnatural that the landowner may have liability." Coletta v. Universityof Akron (1988), 49 Ohio App.3d 35, 37, citing Mikula v. Slavin Tailors
(1970), 24 Ohio St.2d 48, 53; see, also, Klein, 2002-Ohio-2323, at ¶ 14 (holding that the phrase "superior knowledge" means that the landowner has knowledge of "the injury causing hidden danger" that an invitee may not reasonably be expected to protect himself from such harm). Thus, a landowner has "superior knowledge" when he is aware that a dangerous condition exists and the invitee is unaware of the nature of such danger.
 {¶ 15} Appellant contends that Appellee had "superior knowledge" of the dangers posed by the ice and snow because it was informed of the potential for danger by staff members the day on which Appellant fell. Attached to Appellant's response to Appellee's motion for summary judgment is an affidavit from Angela Davis, the Stewart Elementary School PTA president. Mrs. Davis averred in her affidavit that when she arrived at Stewart Elementary School at 8:30 a.m. on January 25, 2000, she "noticed that the sidewalks and parking lot had been plowed; however, due to the weather, the parking lot was very icy and treacherous and in need of being re-salted."
 {¶ 16} Upon entering the school building, Davis "informed the community liaison, Barbara Williams, of the extremely icy nature of the parking lot, and also informed George Loudin, school custodian, of the treacherous parking lot conditions and its need to be re-salted." Mrs. Davis further attested to the fact that "[t]hroughout that early morning and prior to [Appellant's] complaints of falling down, at least three other parents came to the office and made complaints of the icy and treacherous conditions of the school parking lot." According to Mrs. Davis, the school custodian was ordered to re-salt the sidewalks and parking lot, but he failed to do so.
 {¶ 17} If this Court takes the statements contained in Mrs. Davis' affidavit as true, it appears that both parties were aware that the Stewart Elementary School parking lot was icy. The record reveals that Appellant was aware that the parking lot of Stewart Elementary School was icy. During Appellant's deposition, defense counsel asked Appellant "[w]hen you came into the building, what did you notice about the condition of the parking lot?" Appellant replied: "That it had been plowed, but it was, like, icy." She further explained that the parking lot was not fully covered in ice, rather "it had to be patches [of ice] because the entire parking lot wasn't icy." Appellant also stated that she was able to see the areas covered in ice and she described the ice as "black ice because it didn't look like the part there."
 {¶ 18} Although Appellant stated that the parking lot contained ice, she was not certain that the ice was the cause of her fall. The following colloquy took place between Appellant and trial counsel for Appellee.
"Q. * * * Do you know that it was that caused you to fall? Because you said you were surprised that you fell.
"A. I mean, it happened so fast. I believe that — to be honest, it had to be ice because there was, like I said, ice on the — near the doorway, patches of ice, and I wasn't looking for ice. I was walking.
"Q. Okay. So you think it had to be ice, but I take it you didn't see any ice there where you fell?
"A. I don't know. I don't remember.
"Q. Okay. All right. So is it fair for me to say you don't know whether it was ice that caused you to fall?
"A. I don't know whether there was chunks of ice, but I do know that there was ice. I don't know if it was chunks of ice that made me fall or that it was, like you said, black ice. It couldn't be black ice because there was still snow.
"Q. All right. Are you sure that it was ice that caused you to fall?
"A. Yes.
"Q. Why is it that you're sure it was ice that caused you to fall?
"A. Because my feet would not leave the ground like that if it wasn't ice.
"Q. Because you don't have any other explanation for what caused your feet to go out from under you you're assuming it was ice?
"A. Because I saw ice in other parts of the parking lot."
 {¶ 19} It is clear that Appellant saw the ice in the parking lot and she even indicated in her deposition that she was very cautious when she walked her children across the parking lot and into the school building. Because both parties were aware of the ice in the parking lot, we cannot find that Appellee had "superior knowledge" of a dangerous condition created by the snow or ice. Furthermore, any danger posed by the ice in the parking lot was not "greater than that which would ordinarily be anticipated from a natural accumulation of ice[.]"Coletta, 49 Ohio App.3d at 37. Most people anticipate falling on ice if they are not careful and that is exactly what Appellant did. As Appellee did not have "superior knowledge" of any dangers posed by the ice, Appellee did not owe Appellant any duty. Consequently, we find that there is no genuine issue of any material fact and the trial court did not abuse its discretion when it granted Appellee's motion for summary judgment.
 {¶ 20} Appellant's sole assignment of error lacks merit.
 III {¶ 21} Appellant's assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
Slaby, P.J., and Baird, J., concur in Judgment only.
[1] Akron Public Schools was also named as a party to the action, but was later dismissed from the case.