[Cite as *Hill v. Monday Villas Property Owners Assn.*, 2012-Ohio-836.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

CAROL HILL                             :

    Plaintiff-Appellant                :              C.A. CASE NO.    24714

v.                                     :              T.C. NO.    10CV1256

MONDAY VILLAS PROPERTY                 :                 (Civil appeal from
OWNERS ASSOCIATION, et al.                               Common Pleas Court)

    Defendants-Appellees               :


                                       :


         . . . . . . . . . .

**O P I N I O N**

Rendered on the ___2nd___ day of ___March___, 2012.


        . . . . . . . . . .

JOSEPH P. McDONALD, Atty. Reg. No. 0055230, 683 State Route 725, Suite 210, Centerville, Ohio 45459
    Attorney for Plaintiff-Appellant

BRANDON M. ALLEN, Atty. Reg. No. 0079164 and PAUL B. RODERER, JR., Atty. Reg. No. 0063936, 4 E. Schantz Avenue, P. O. Box 897, Dayton, Ohio 45409
    Attorneys for Defendant-Appellee, Monday Villas Property Owners Association

CHRISTIE A. M. BRYANT, Atty. Reg. No. 0080806, 5181 Natorp Blvd., Suite 535, Mason, Ohio 45040
    Attorney for Defendant-Appellee, 4 Seasons Property Maintenance, L.L.C.

GREGORY P. DUNSKY, Atty. Reg. No. 0009098, Assistant U.S. Attorney, 200 W. Second Street, Suite 602, Dayton, Ohio 45402
    Attorney for Defendant-Appellee, United States Department of Health and Human Services


        . . . . . . . . . .

FROELICH, J.

{¶ 1}  Carol Hill appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of the Monday Villas Property Owners Association ("Monday Villas") on her personal injury and contract claims.

{¶ 2}  On the morning of February 24, 2008, Hill fell in the common area of Monday Villas condominium complex, which is located in Huber Heights.   Specifically, Hill fell while attempting to circumvent a large frozen puddle on the sidewalk leading to her unit. Parts of the ground were covered with snow and ice at the time of Hill's fall, but there was no precipitation at that time.   Hill suffered injuries in the fall, including a broken hip.

{¶ 3}  In April 2008, Hill filed a complaint against Monday Villas and "John Doe Corporation" for her personal injuries (Case No. 2008 CV 3671).   This complaint was voluntarily dismissed pursuant to Civ.R. 41(A), without prejudice.

{¶ 4}  Hill subsequently filed a second complaint against Monday Villas, alleging negligence and breach of a contractual duty.   The complaint also alleged negligence against the maintenance company hired by Monday Villas, Four Seasons Property Maintenance, LLC.   Hill's insurance company and the U.S. Department of Health were also named, because they had paid some of Hill's medical expenses.   In its answer,  Monday Villas denied the claims and asserted several defenses, including assumption of the risk, the open and obvious nature of the hazard, and absence of a duty, and the natural accumulation of the ice and snow (if any) at the location of Hill's fall.

{¶ 5}  Both parties filed motions for summary judgment.   The trial court granted Monday Villas's motion, concluding that "there [was] no genuine issue that [Hill]

encountered a natural accumulation of ice and snow on the sidewalk at Monday Villas. [Hill] had a choice between the sidewalk and the grass, both of which were covered with naturally occurring ice and/or snow. Regardless of the surface upon which [Hill] fell, there is no issue that her injuries were caused by natural winter phenomena." The trial court further concluded that Hill was "intimately familiar" with the complex and the area around her unit, including the potentially icy puddle on the sidewalk of which she complained. The trial court designated its decision granting summary judgment as a final appealable order, although it did not expressly refer to the other claims.

{¶ 6} Hill appeals from the trial court's judgment, raising three assignments of error.

{¶ 7} Hill's first and second assignments of error state:

THE TRIAL COURT ERRED IN FINDING THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE ICE AND SNOW WHICH HILL ENCOUNTERED WAS A "NATURAL" ACCUMULATION, FOR WHICH MONDAY VILLAS OWES NO DUTY, OR AN "UNNATURAL" ACCUMULATION, FOR WHICH MONDAY VILLAS OWES A DUTY.

THE TRIAL COURT ERRED IN FINDING THAT MONDAY VILLAS DID NOT HAVE A DUTY TO CAROL HILL TO CLEAR "NATURAL" ACCUMULATIONS OF ICE AND SNOW FROM THE SIDEWALKS OF THE CONDOMINIUM COMPLEX WHEN THOSE SIDEWALKS WERE

THE ONLY MEANS OF INGRESS AND EGRESS TO HER CONDOMINIUM.

{¶ 8}    Hill contends that there was a genuine issue of material fact as to whether the ice on the sidewalk was an unnatural accumulation because "pooling in this area had been a problem for at least five years," and an attempt to repair the sidewalk had not solved the problem.  She also claims that there was a genuine issue of material fact as to Monday Villas's negligence because the puddle in question blocked her sole means of accessing her unit.

{¶ 9}    Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made.  *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).  The moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).  If the moving party satisfies its initial burden, "the nonmoving party then has a reciprocal burden *** to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party."

Id.; see Civ.R. 56(E).

{¶ 10}    In any negligence action, the plaintiff must demonstrate the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of the duty. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989); *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989).

{¶ 11}    Under the common law related to premises liability, the status of a person who enters on land determines the nature and extent of the legal duty owed to him or her. *Shump v. First Continental-Robinwood Assoc.*, 71 Ohio St.3d 414, 417, 644 N.E.2d 291 (1994).    An owner of a unit in a condominium complex has generally been considered a business invitee in relation to a homeowners' association, which controls the common areas of the complex.    *See e.g., Brandimarte v. Packard*, 8th Dist. Cuyahoga No. 67872, 1995 WL 307751, *2 (May 18, 1995), citing   *Tarescavage v. Meridian Condominium, Inc.*, 8th Dist. Cuyahoga No. 65446, 1994 WL 189163, *5 (May 12, 1994).

{¶ 12}    An owner or occupier of land owes no duty to warn invitees of open and obvious dangers on the property.    *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203-204, 480 N.E.2d 474 (1985), citing *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 233 N.E.2d 589;   *Swiger v. Kohl's Dept. Store, Inc.*, 191 Ohio App.3d 629, 2010-Ohio-6230, 947 N.E.2d 232, ¶ 8 (2d. Dist.).    To be open and obvious, a hazard must not be concealed and must be discoverable by ordinary inspection. *Parsons v. Lawson Co.*, 57 Ohio App.3d 49, 50-51, 566 N.E.2d 698 (1989).     "The rationale is that an open and obvious danger itself serves as a warning and that 'the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate

measures to protect themselves.'" *Id.*, citing *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). Natural accumulations of snow and ice are generally considered to be open and obvious. *Sidle* at paragraph two of the syllabus; *Swiger*, citing *Brinkman v. Ross*, 68 Ohio St.3d 82, 83-85, 623 N.E.2d 1175 (1993).

{¶ 13} In support of its motion for summary judgment, Monday Villas relied on depositions, including photographs, from Paul Gehman, a former officer of Monday Villas, John Collins, the member of the association who was responsible for building maintenance, and Hill. Hill's own testimony established that her fall did not occur at the location of the puddle. The evidence further indicated that there was nothing "unnatural" contributing to the existence of the puddle, except the uneven or depressed nature of the pavement. Monday Villas also presented evidence that it had contracted with Four Seasons for the removal of snow from the common areas of the development and that Four Seasons had, in fact, performed these services.

{¶ 14} In opposing Monday Villas's motion for summary judgment, Hill relied on the same three depositions and the attached photos and documents. She pointed to evidence that the central sidewalk began at the parking lot, passed between several units, and ended at Hill's front door; the central sidewalk was transected at several points by sidewalks leading to other units and their patios. Hill stated in her deposition that the sidewalk leading from the parking lot to her unit became "covered with water when it rained heavily." Gehman and Collins also stated that water tended to pool on the central sidewalk between the parking lot and Hill's unit after significant amounts of rain.

{¶ 15}    Hill stated that, on the morning of February 24, 2008, such a puddle was present on the sidewalk and appeared to be frozen; to avoid it, she walked some distance across the grass in an effort to reach her unit.  While so traversing the grass, Hill came to a spot where she needed to cross a "second" sidewalk, which ran roughly perpendicular to the one on which the puddle was located.  When she stepped from the grass onto the second sidewalk, she fell to the ground.   No one witnessed Hill's fall.

{¶ 16}    Hill testified that she did not "notice anything on the second sidewalk" and did not know what caused her to fall.   She testified: "I cannot tell you what happened.   All I know is when I realized what had happened, I was on the ground.   I was on the cement." She also testified that it had been a "moderate to bright morning," that the temperature was above freezing, and that, although the grass was covered with snow, neither the parking lot nor the sidewalk was covered with snow.   Hill claims that she had verbally lodged complaints about the sidewalk with Monday Villas in the past, and she presented some evidence that efforts had been made to eliminate the pooling by replacing part of the sidewalk.

{¶ 17}    Before addressing Hill's claim that the puddle represented an unnatural accumulation of snow or ice and to the trial court's analysis of this issue, we note that Hill did not allege that she fell on snow or ice; she could not explain how or why she had fallen. Although much of the evidence focuses on issues related to the puddle on the central sidewalk, it is clear from Hill's testimony that she did not fall due to snow or ice that had accumulated at that location; Hill had chosen a route through the grass in order to avoid the puddle.   Whether the puddle itself represented a natural or unnatural accumulation of ice or

snow or whether it was an open and obvious danger was not directly at issue, because Hill did not fall at the location of the puddle.

{¶ 18}   We also observe that Hill disclaimed any knowledge of what caused her fall as she stepped onto the second sidewalk.   "When the cause of a fall cannot be identified, a finding of negligence is precluded." *Russell v. Creatif' Catering, Inc.*, 2d Dist. Montgomery No. 17031, 1998 WL 833811, *2 (Dec. 4, 1998), citing *Stamper v. Middletown Hosp. Assn.*, 65 Ohio App.3d 65, 67-68, 582 N.E.2d 1040 (12th Dist. 1989), and *Harshaw v. Trotwood Foodtown, Inc.*, 2d Dist. Montgomery No. 15125, 1996 WL 74702 (Jan. 24, 1996).   Neither Hill nor any of the other witnesses testified as to any condition that would have caused Hill to fall where she did, and there was no suggestion that there existed a natural <u>or</u> unnatural accumulation of snow or ice at that location.

{¶ 19}   An owner of land owes no duty to warn invitees of open and obvious dangers on the property, including natural accumulations of ice and snow on sidewalks or in parking lots.   *Swiger*, citing *Brinkman*, 68 Ohio St.3d 82, 83-85, 623 N.E.2d 1175. A property owner may have a duty to remove "unnatural" or "improper" accumulations of snow and ice, which exist when the accumulation creates a hazard "substantially more dangerous" than that normally associated with snow or ice.   *Murphy v. McDonald's Restaurants of Ohio, Inc.,* 2d Dist. Clark No. 2010 CA 4, 2010-Ohio-4761, ¶ 18;   *Community Ins. Co. v. McDonalds Restaurants of Ohio, Inc.*, 2d Dist. Montgomery Nos. 17051, 17053, 1998 WL 852772 (Dec. 11, 1998).   Although it is undisputed that a depressed area in or around the central sidewalk caused water to pool there, no evidence was offered that Monday Villas contributed to an unnatural accumulation of snow or ice by creating a blockage or flow of

water apart from normal drainage.

{¶ 20} In the past, we have dealt with various attempts to characterize the presence of snow and ice as unnatural. For example, we have held that snow placed on elevated islands or in piles from plowing, which later caused a runoff of water that froze into ice, was not an unnatural accumulation. *Murphy; McDonald v. Koger,* 150 Ohio App.3d 191, 2002-Ohio-6195, 779 N.E.2d 1083. We have also rejected the suggestion that an accumulation of ice on a man-made surface creates a question of fact as to whether the accumulation was unnatural. *See, e.g.*, *Debie v. Cochran Pharmacy-Berwick, Inc.,* 11 Ohio St.2d 38, 39, 227 N.E.2d 603 (1967) (sidewalk); *Sidle*, 13 Ohio St.2d 45, 46, 233 N.E.2d 589 (steps); *DeAmiches v. Popczun*, 35 Ohio St.2d 180, 181, 299 N.E.2d 265 (1973) (driveway). We have further held that depressions in a paved surface, such as a step or sidewalk, "should reasonably be expected" by an invitee, who can anticipate and protect herself against them. *Gober v. Thomas & King, Inc.*, 2d Dist. Montgomery No. 16248, 1997 WL 451430, *4 (June 27, 1997).

{¶ 21} Other appellate courts have also addressed the accumulation of water or ice in a depression in a sidewalk or driveway, which subsequently froze due to cold weather; these courts have repeatedly held that such an accumulation of ice is not unnatural. *See e.g.*, *Juredine v. Heather Hill, Inc.*, 11th Dist. Geauga No. 92-G-1704, 1993 WL 130101 (Mar. 26, 1993); *Goodwill Indust. of Akron v. Sutcliffe*, 9th Dist. Summit No.19972, 2000 WL 1288057 (Sept. 13, 2000). "[S]ince the build-up of snow and ice during winter is regarded as a natural phenomenon, the law requires, at the very least, some evidence of an intervening act by the landlord (or a property owner) that perpetuates or aggravates the

pre-existing, hazardous presence of ice and snow" to estalish an unnatural accumulation. *Porter v. Miller*, 13 Ohio App.3d 93, 95, 468 N.E.2d 134 (6th Dist. Lucas 1983); *Houvouras v. Pant*, 2d Dist Montgomery No. 13989, 1994 WL 64545, *4 (Mar. 2, 1994).

**{¶ 22}** The trial court found that there was "no genuine issue that [Hill] encountered a natural accumulation of ice and snow on the sidewalk." It appears that this finding focused on the central sidewalk, where the puddle lay, although this is not where the fall occurred. Even if we were to assume, for the sake of argument, that an unnatural accumulation of ice existed on the central sidewalk, Hill acknowledged in her deposition that she perceived the risk posed by the frozen puddle and took steps to avoid it. Monday Villas presented evidence that the other sidewalks had been cleared, and Hill admitted this in her deposition. There was no evidence of a natural <u>or</u> unnatural accumulation of ice at the location where Hill fell, and the accumulation of ice on the central sidewalk was not the proximate cause of Hill's injury.

**{¶ 23}** Moreover, Hill created no genuine issue of material fact that her decision to avoid the hazard posed by the puddle was, in itself, the proximate cause of any injury that she sustained on her alternate route. Hill relies on cases in which a hazard known to an owner blocked the sole means of ingress and egress, wherein the plaintiff did not have an available alternative and had to cross the hazard. See e.g., *Mizenis v. Sands Motel, Inc.*, 50 Ohio App.2d 226, 362 N.E.2d 661 (6th Dist. 1975) (motel stairs); *Hammond v. Moon*, 8 Ohio App.3d 66, 69, 455 N.E.2d 1301 (10th Dist. 1982) (steps of office building in which plaintiff worked). These cases are not factually analogous to this case, wherein an alternative route –

a wide, albeit snow-covered, lawn – was available.[1]

{¶ 24}    There was no genuine issue of material fact that the icy puddle on the sidewalk was an unnatural accumulation, which Monday Villas owed a duty to remove. There was also no genuine issue of material fact that the icy puddle was the proximate cause of Hill's fall.   Accordingly, the trial court did not err in granting Monday Villas's motion for summary judgment.

{¶ 25}    The first and second assignments of error are overruled.

{¶ 26}    Hill's third assignment of error states:

THE TRIAL COURT ERRED IN FINDING THAT THE MONDAY VILLAS CONDOMINIUM DECLARATIONS IMPOSED A MUTUAL DUTY ON MONDAY VILLAS AND CAROL HILL, AS A CONDOMINIUM OWNER, TO CLEAR SIDEWALKS IN COMMON AREAS OF SNOW, AND THAT MONDAY VILLAS COULD NOT BE LIABLE TO HILL FOR BREACH OF THIS DUTY BECAUSE IT WAS MUTUAL, WHEN THE DECLARATION ONLY IMPOSE[D] A MUTUAL DUTY FOR MONDAY VILLAS AND INDIVIDUAL UNIT OWNERS TO CLEAR STREETS OF SNOW AND MAKES NO REFERENCE TO INDIVIDUAL OWNERS HAVING A DUTY TO CLEAR SIDEWALKS.

---

[1] *Hammond* also discusses a duty assumed by a landlord's past conduct. This court has sought to distance itself from the suggestion in *Hammond* and its progeny that a landlord can assume such a duty through its actions, on the grounds that imposing a duty on landlords to remove ice and snow through an "implied course of conduct" theory would discourage landlords from ever attempting to remove ice and snow from the common areas of their premises as a courtesy to their tenants, and would, therefore, make those areas less safe. *Pacey v. Penn Garden Apts.,* 2d Dist. Montgomery No. 17370, 1999 WL 76841, *7 (Feb. 19, 1999).

{¶ 27} Hill contends that Monday Villas had a contractual duty, imposed by the Monday Villas Condominium Declaration, to clear the sidewalks in the common areas of snow and ice. Thus, she asserts that, even if the puddle on the sidewalk were a natural accumulation, Monday Villas had a duty to protect her from the hazard it presented. The trial court agreed with this assertion, but it further held that Hill and the other residents of the complex shared the duty to keep common areas free of ice and snow. The court refused to "impose liability on [Monday Villas] for breach of a duty under which [Hill] herself was similarly responsible." Hill disagrees with the latter part of the trial court's conclusion. Monday Villas contends that the condominium declarations did not create a contract, and therefore it owed no contractual duty to Hill.

{¶ 28} Monday Villas claims that "Condominium Declarations are not a contract under Ohio law," and that they do not "create a private cause of action." In fact, there is case law supporting the general proposition that condominium declarations and bylaws are contracts between the association and the purchaser. *See Acacia on the Green Condominium Assoc., Inc. v. Gottlieb,* 8th Dist Cuyahoga No. 92145, 2009-Ohio-4878, ¶ 20, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 35-36, 514 N.E.2d 702 (1987); *see also Murtha v. Ravines of McNaughton Condominium Assn*., 10th Dist. Franklin No. 09AP-709, 2010-Ohio-1325, ¶ 13. However, whether such a declaration or the cases finding such declarations to be a contract would also support a cause of action in contract for a personal injury is another question, and one which we need not reach, because regardless of whether Monday Villas had a duty, there is no evidence that a duty was breached.

{¶ 29} In *Davis v. The Timbers Owners' Assn*., 1st Dist. Hamilton No. C-990409,

2000 WL 43709 (Jan. 21, 2000), the court similarly confronted a claim by a condominium owner, who fell on ice in a common area, that the association had assumed a duty to remove snow and ice through its bylaws and declarations. The court's resolution of the claim is helpful to our discussion:

{¶ 30}    "To prove a breach in a case where a defendant has assumed a duty to remove snow and ice, the plaintiff must show that the defendant removed the snow and ice in a manner inconsistent with what a reasonable person would have done under similar circumstances – in other words, negligently. See *Kinkey v. Jewish Hosp. Assn. of Cincinnati*, 16 Ohio App.2d 93, 95, 242 N.E.2d 352, 354 (1968). Here, even with the evidence viewed in the light most favorable to [the plaintiff], reasonable minds could not have concluded that any of the defendants breached any duty owing to her. There is no evidence that the defendants plowed or piled the snow in a negligent manner. Persons who plow or shovel snow are not negligent merely because ice remains after snow is cleared. *See id.* at 96, 242 N.E.2d at 354; * * * . And the snow had to be piled somewhere, with a certain natural runoff of water to be expected. See *Hoenigman v. McDonald's Corp.* (Jan. 11, 1990), Cuyahoga App. No. 56010, unreported. Because of the cold weather on the day that [the plaintiff] fell, conditions were hazardous to begin with, and we conclude that there is no evidence that any of the defendants negligently increased the risk. Ice and snow are dangerous, but the danger is the price we pay for living in an area with an ever-changing kaleidoscope of weather."

{¶ 31}    We conclude that, even assuming that Hill had a right to assert a claim based on Monday Villas's assumption of the duty in its declarations, she failed to create a genuine

issue of material fact that Monday Villas had executed that duty – the removal of ice and snow – in a negligent manner. Hill herself testified that the parking lot and sidewalk were clear at the time of her fall, but for the puddle. And, because she did not fall at the location of the puddle, any defect in the maintenance of the sidewalk at that location was not the proximate cause of her injury.

**{¶ 32}** Hill's third assignment of error is overruled.

**{¶ 33}** The judgment of the trial court will be affirmed.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

Copies mailed to:

Joseph P. McDonald
Brandon M. Allen
Paul B. Roderer, Jr.
Christie A. M. Bryant
Gregory P. Dunsky
Hon. Michael L. Tucker