[Cite as *Tarpley v. Aldi Inc. Ohio*, 2013-Ohio-624.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| EVA L. TARPLEY, et al. | : | |
| | : | Appellate Case No. 25366 |
| Plaintiff-Appellants | : | |
| | : | Trial Court Case No. 2011-CV-5601 |
| v. | : | |
| | : | |
| ALDI INC. OHIO, dba ALDI | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of February, 2013.

. . . . . . . . . . .

GARY J. LEPPLA, Atty. Reg. #0017172, and PHILIP J. LEPPLA, Atty. Reg. #0089075, Leppla Associates, Ltd., 2100 South Patterson Boulevard, Dayton, Ohio 45409-0612
      Attorneys for Plaintiff-Appellants

AMELIA A. BOWER, Atty. Reg. #0013474, and AL A. MOKHTARI, Atty. Reg. #0071796, Plunkett Cooney, 300 East Broad Street, Suite 590, Columbus, Ohio 43215
      Attorneys for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Eva L. Tarpley appeals from the trial court's entry of summary judgment in

favor of appellee Aldi, Inc., on a negligence complaint stemming from her trip and fall outside an Aldi grocery store.[1]

{¶ 2}    Tarpley's sole assignment of error challenges the trial court's finding that a handrail support bracket, the alleged cause of her fall, was an open and obvious hazard.

{¶ 3}    The record reflects that seventy-eight year old Tarpley and her daughter, Betty Crews, visited the Aldi store to shop for peaches. After deciding not to make a purchase, they exited the store. Tarpley followed Crews outside, and the two women proceeded past a handrail outside the exit door. Tarpley tripped over something as they walked. She fell to the ground face first and sustained injuries. Crews happened to be turning around to check on her mother at the moment of the fall. Although Crews did not see what Tarpley's foot hit, she did observe the fall. Immediately after Tarpley went to the ground, Crews saw Tarpley's foot next to a metal bracket bolted to the ground. A vertical piece of railing extended from the bracket to a horizontal handrail above. Crews noticed that the vertical piece of railing was not connected to the metal bracket. Based on the position of Tarpley's body, Crews surmised that her mother must have tripped on the metal bracket.

{¶ 4}    Tarpley subsequently sued Aldi for negligence as a result of the fall. Aldi moved for summary judgment, arguing, inter alia, that the metal bracket was an open and obvious hazard. The trial court agreed. Finding no genuine issue of material fact, it sustained Aldi's motion. The trial court reasoned that the metal bracket was open and obvious, as a matter of law, and that "[t]here was no evidence presented of any attendant circumstances that

---

[1] Eva Tarpley's husband, Don, is also an appellant herein based on a derivative loss-of-consortium claim he asserted below. The focus of the present appeal, however, is Eva Tarpley's negligence claim.

would defeat the open and obvious doctrine." (Doc. #45 at 6-7).

{¶ 5} We review a grant of summary judgment de novo, which means that "we apply the standards used by the trial court." *Brinkman v. Doughty*, 140 Ohio App.3d 494, 497, 748 N.E.2d 116 (2d Dist.2000). Summary judgment is appropriate when a trial court correctly finds "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 6} On appeal, Tarpley contends the trial court erred in finding that the metal bracket was open and obvious. While conceding that the bracket was "visible," she maintains that it was not reasonably "discernable." Tarpley argues that she had no obligation to look down and see the foot-level bracket. She also suggests that attendant circumstances, including her age and the location of the bracket, should preclude application of the open-and-obvious doctrine.

{¶ 7} In order to prevail on a negligence claim, "one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981). The status of a person who enters the land of another defines the scope of the legal duty owed to the entrant. *Gladon v. Greater Cleveland Reg. Transit Auth.*, 75 Ohio St.3d 312, 315, 1996-Ohio-137, 662 N.E.2d 287. Here Tarpley was a business invitee on Aldi's property. As it pertains to business invitees, an owner's duty is to keep the premises in reasonably safe condition and to warn of known dangers. *James v. Cincinnati*, 1st Dist. Hamilton No. C-070367, 2008-Ohio-2708, ¶24,

citing *Eicher v. U.S. Steel Corp.*, 32 Ohio St.3d 248, 512 N.E.2d 1165 (1987). Liability arises when an owner has "superior knowledge of the particular danger which caused the injury" as an "invitee may not reasonably be expected to protect himself from a risk he cannot fully appreciate." *Uhl v. Thomas*, 12th Dist. Butler No. CA2008-06-131, 2009-Ohio-196, ¶13, citing *LaCourse v. Fleitz*, 28 Ohio St.3d 209, 210, 503 N.E.2d 159 (1986).

**{¶ 8}** When a danger is open and obvious, a property owner owes no duty of care to individuals lawfully on the premises. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶14. To be open and obvious, a hazard must not be concealed and must be discoverable by ordinary inspection. *Parsons v. Lawson Co.*, 57 Ohio App.3d 49, 50-51, 566 N.E.2d 698 (5th Dist.1989). The issue is not whether an individual observes a condition, but whether the condition is capable of being observed. *Lydic v. Lowe's Cos., Inc.*, 10th Dist. Franklin No. 01AP-1432, 2002-Ohio-5001, ¶10; *Larrick v. J.B.T., Ltd.*, 2d Dist. Montgomery No. 21692, 2007-Ohio-1509, ¶11.

**{¶ 9}** Despite Tarpley's arguments, we believe the trial court properly applied the open-and-obvious doctrine. A photograph of the metal bracket reveals that it is an L-shaped steel plate, measuring perhaps four inches by four inches. The plate is bolted to the ground, and a tongue extends straight up a few inches.[2] A piece of vertical railing support extends down from the horizontal handrail and is supposed to attach to the tongue with bolts. The apparent purpose of the vertical railing is to help stabilize the handrail above it. There were

---

[2]The dimensions of the steel plate are not part of the record. Our estimate is based on an examination of two photographs. In an affidavit attached to Tarpley's memorandum opposing summary judgment, Crews opined that the bracket tongue "protruded [upward] only about an inch above foot level." (Doc. #27, Crews affidavit at ¶2). This averment that the bracket extended about an inch "above foot level" is consistent with our observation that the total height of the tongue was a few inches.

four holes for bolts or screws in both the vertical railing and the plate tongue apparently to affix the vertical rail to the floor bracket, but no bolts or screws appear in the submitted photos.[3] Crews stated in her deposition that she examined the bracket after Tarpley's fall and noticed that it was "separated" or "disconnected" from the vertical railing. (Crews depo. at 11, 15). She acknowledged that the metal bracket itself was affixed to the ground and was immovable. (*Id.* at 16, 32).

---

[3] We are unable to discern, and will not speculate, whether the parts may have been welded or otherwise connected.

{¶ 10} Setting aside (for a moment) the fact that the vertical railing was not attached to the metal bracket,[4] we believe the presence of the metal floor bracket was open and obvious, as was any tripping hazard that it posed. She acknowledged that nothing kept her from being able to see where she was walking at the time of her fall. (*Id*. at 54-58). The incident occurred in mid-afternoon on a warm, summer day. (Crews depo. at 7). Crews admitted nothing was hiding the bracket or the railing from view. (*Id*. at 21-22). Based on our review of the photographs in the record, we agree with the trial court that the metal bracket was open and obvious as a matter of law. Contrary to Tarpley's argument, we see no genuine issue of material fact as to whether the metal bracket was discernable to an ordinary person paying attention to where she was walking.[5]

{¶ 11} Tarpley's argument about attendant circumstances fails to persuade us otherwise. "As a corollary to the open-and-obvious doctrine, [this court has] recognized that there may be attendant circumstances [that] divert the individual's attention from [a] hazard and excuse her failure to observe it." *Olivier v. Leaf & Vine*, 2d Dist. Miami No. 2004 CA 35, 2005-Ohio-1910, ¶22. In her brief, Tarpley argues: "The one-inch, loose bracket, unanticipated by a common elderly customer as she exited the store into an area of pedestrian and automobile traffic, snagging the customer's foot and resulting in a fall, were all matters well within the realm of 'attendant circumstances.'" (Appellant's brief at 15).

{¶ 12} Having reviewed the record, we agree with the trial court that no attendant

---

[4] We will separately address the potential impact of the vertical railing and metal bracket being disconnected infra.

[5] If the metal bracket were not open and obvious, Aldi would have a duty to warn customers of a potential tripping hazard. Based on our review of the photographs, we cannot conceive of requiring Aldi to post a sign on its handrail warning customers that they could trip on the metal floor bracket underneath the handrail. This is the sort of hazard customers reasonably can be expected to discover on their own.

circumstances exist. As an initial matter, the metal bracket was not loose. It was firmly affixed to the ground. (Crews depo. at 16, 32). Although Tarpley was seventy-eight years old, her age did not constitute an attendant circumstance that diverted her attention and justified her failure to observe the bracket. We note too that Tarpley's balance and vision were good and that she had no problems walking. (Tarpley depo. at 53-54, 57-58). Contrary to any implication in her brief that she may have been carrying groceries, Tarpley admitted that neither she nor her daughter had purchased anything. (*Id*. at 33). Finally, we see no evidence of any traffic, pedestrian or vehicular, that would have constituted an attendant circumstance justifying a failure to observe the metal bracket. The record reflects only that Tarpley and Crews had exited a door that leads to two parking lots. (Stefaniuk depo. at ¶18; Stutz depo. at 20-21).

{¶ 13} In opposition to our determination that the metal bracket was open and obvious and that no attendant circumstances existed, Tarpley cites several cases. Upon review, we find them to be distinguishable. In *Thompson v. Kroger Co.*, 2d Dist. Montgomery No. 13248, 1992 WL 127708 (June 9, 1992), which did not involve the open-and-obvious doctrine, this court found a genuine issue of material fact as to whether attendant circumstances made an otherwise insubstantial defect in the surface of a parking lot substantial and actionable. In that case, however, the plaintiff was stepping down into the parking lot at night with large bags of groceries obstructing his view. *Thompson* is distinguishable from the present case, which involves Tarpley exiting the Aldi store in mid-afternoon with nothing in her arms.

{¶ 14} In *Neura v. Goodwill Industries*, 9th Dist. Medina No. 11CA0052-M, 2012-Ohio-2351, another case cited by Tarpley, the Ninth District found a genuine issue of material fact as to whether a small crack where a concrete ramp met a parking lot was open

and obvious. In reaching its conclusion, the Ninth District noted that the plaintiff had encountered the crack while pushing a loaded shopping cart that obstructed her view. *Id.* at 11-12. *Neura* is distinguishable for at least two reasons: (1) Tarpley's view was not obstructed by a loaded shopping cart or anything else and (2) the metal bracket that caused her fall appears to be significantly more "obvious" than the pavement crack in *Neura*.

{¶ 15} Tarpley also cites this court's opinion in *Bumgardner v. Wal-Mart Stores*, 2d Dist. Miami No. 2002-CA-11, 2002-Ohio-6856. In that case, the plaintiff tripped on a pallet and fell. This court found a genuine issue of material fact as to whether the pallet constituted an open and obvious hazard, reasoning:

> From the photographs submitted in evidence, and relied upon by the trial court, it appears that the pallet was located at the end of, but at the back side of, a row of shelves that were stocked with merchandise. It also appears that a reasonable person could find that the pallet was located in an area where a customer would be expected to turn or change direction. A reasonable person could also differ in determining whether the position of the portion of the pallet not covered with cartons of soft drinks was obscured by the row of shelves to which it was adjacent, and whether it constituted an unreasonable tripping hazard.

*Id.* at ¶26.

{¶ 16} Tarpley fails to explain how *Bumgardner* pertains to her case, which involves markedly dissimilar facts. We find *Bumgardner* distinguishable. Tarpley also cites *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 693 N.E.2d 271 (1998). In that case, the plaintiff tripped and fell over a bucket the defendant had placed on the sidewalk

to prop open a door. The issue before the Ohio Supreme Court was whether the trial court should have granted the defendant judgment notwithstanding the verdict because the plaintiff had been more than fifty-percent negligent. The existence of the defendant's duty already had been determined and was not an issue on appeal. In *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶8, the Ohio Supreme Court pointed out that "*Texler* does not even address the open-and-obvious doctrine[.]" Thus, Tarpley's citation to *Texler* is misplaced.

{¶ 17}  Finally, Tarpley discusses *Johnson v. Southview Hospital*, 2d Dist. Montgomery No. 25049, 2012-Ohio-4974. The plaintiff in *Johnson* tripped and fell on the lower track of a partially closed accordion-style gate where the track crossed the entire entryway. The plaintiff admitted that she could see where she was going and that nothing obstructed her view. After reviewing the record, this court concluded that the metal track was open and obvious and that no attendant circumstances existed.

{¶ 18}  Tarpley contends the outcome of *Johnson* turned on the plaintiff's admission that the gate track was clearly visible and unobstructed. But Tarpley similarly testified that nothing prevented her from seeing where she was walking when she fell. (Tarpley depo. at 54-58). Crews also acknowledged that nothing was obstructing the railing or bracket from view. (Crews depo. at 21-22). Moreover, this court's decision in *Johnson* did not depend solely on the plaintiff's admission that nothing obstructed her view. This court also reviewed photographs of the track and found that it was open and obvious. *Johnson* at ¶14. Likewise, in the present case, we have examined photographs of the metal bracket. Those photographs support our conclusion that it too was open and obvious.

{¶ 19}  The only remaining issue concerns the potential impact, if any, of the metal

bracket being unattached to the vertical railing that extended down to it. In the proceedings below, Tarpley characterized the bracket and vertical railing as "defective" because they were not bolted to one another. She repeats this refrain in her appellate brief, often referring to the "defective railing/bracket" or "defective railing." Having reviewed the record—including Crews's affidavit, all depositions, and photographs of the railing and bracket—we fail to see what difference it made that the vertical railing was not attached to the floor bracket. The record contains no evidence that the lack of bolts connecting the vertical railing to the metal floor bracket contributed to Tarpley's fall. "Proof of an injury and a condition that existed simultaneous to the injury does not necessarily tend to prove that the condition caused the injury." *Lazenby v. Rollins Truck Leasing*, 6th Dist. Lucas No. L90-351, 1991 WL 254175, *2 (Nov. 8, 1991).

{¶ 20}　As set forth above, Tarpley's claim is that she tripped on the metal bracket and fell. (*See*, *e.g.*, Tarpley depo. at 36). The bracket was anchored to the ground. The lack of bolts connecting the vertical railing to the floor bracket did not change the location of the bracket. The bracket remained underneath the horizontal handrail. Notably, Crews was asked during her deposition what difference it made that the vertical railing and bracket were not connected at the ground. She responded: "I can't answer that. I don't know." (Crews depo. at 25). The evidence indicates that it made no difference. In light of Tarpley's theory that she tripped on the metal bracket, we fail to see how the outcome would have been any different if the bracket and vertical railing had been bolted together. Even if the absence of bolts rendered the railing and bracket defective, we see no genuine issue of material fact as to whether this defect proximately caused Tarpley's fall.

{¶ 21}　We might reach a different conclusion if Tarpley had leaned on the horizontal

handrail and it had given way due to a lack of bolts connecting the vertical support to the metal floor bracket. If the handrail had failed in such a way, causing Tarpley to stumble and catch her foot on the metal bracket, a viable negligence claim might exist. We do not believe the absence of bolts attaching the vertical support rail to the metal bracket was open and obvious.[6] Therefore, if that particular defect had caused the handrail to give way and resulted in Tarpley's stumble, summary judgment on the basis of the open-and-obvious doctrine would be improper.

{¶ 22} On appeal, however, Tarpley does not really advocate the foregoing theory or even attempt to explain how the absence of bolts connecting the vertical railing to the metal bracket contributed to her fall. In her deposition, she admitted not knowing what had caused her to trip. (Tarpley depo. at 38, 52-53). She knew only that she had tripped on something. (*Id*.). After her fall, she surmised that she must have tripped on the metal bracket. (*Id*. at 36, 40-42). Crews agreed with this assessment. (Crews depo. at 9-12).

---

[6] In an affidavit opposing summary judgment, Crews averred that the "defective railing/bracket over which [Tarpley] fell was not open and obvious[.]" (Doc. #27 at Crews affidavit). She further averred that she "was unable to observe any defect in [her] pathway." She opined that no reasonable person would have seen the "defective railing/bracket." Although Crews personally may not have noticed a "defect" in her pathway, her opinion about whether a reasonable person would have done so is not dispositive. Similarly, Tarpley cannot avoid summary judgment based on Crews's personal belief that the open-and-obvious doctrine does not apply. In any event, to the extent that Crews meant the specific "defect" here (the absence of bolts attaching the vertical support rail to the metal bracket) was not open and obvious, we agree. As explained above, summary judgment was appropriate, however, because the evidence does not reasonably support a finding that a lack of bolts connecting the support rail to the bracket caused Tarpley's fall.

{¶ 23} Even if a trier of fact could infer from the circumstances that Tarpley had tripped on the metal bracket as she alleges,[7] the evidence does not reasonably support an additional finding that she tripped because the horizontal handrail failed due to a lack of bolts connecting the vertical support to the metal floor bracket. When questioned about her fall, Tarpley initially stated that she thought she had touched the handrail. (Tarpley depo. at 47). She later admitted being unable to swear under oath that she had touched the handrail. The following exchange from her deposition is instructive:

Q. Now you mentioned before you fell putting your hand on the handrail?

A. I think there was a rail and evidently I must have because if I—always if there's a rail there I put my hand on it and I think when I did that, I think that's when the piece of metal must have come out from underneath it or something. I can't recall of how I done that. I can't recall that far.

Q. And you're guessing about what might have caused that piece of metal to come out?

A. Yeah, because I don't know.

Q. You didn't see it, right?

A. I didn't see it.

Q. I just want to focus on what you actually remember as opposed to what you think might have happened. Do you remember specifically if you

---

[7] In *Hill v. Monday Villas Property Owners Assoc.*, 2d Dist. Montgomery No. 24714, 2012-Ohio-836, ¶18, this court noted that when the cause of a fall cannot be identified a finding of negligence is precluded. This does not mean, however, that a plaintiff must have direct evidence identifying the cause of a fall. Under appropriate circumstances, the cause of a fall reasonably may be inferred through circumstantial evidence. *France v. Parliament Park Townhomes*, 2d Dist. Montgomery No. 14264, 1994 WL 151658 (April 27, 1994).

would have put your hand on the rail before you fell?

A. I don't even specifically remember that. I think, best I can recall, there's a rail that runs down through there.

Q. Do you know whether there's a rail on the right or left side?

A. I don't have no idea.

Q. And you don't specifically remember putting your hand on a rail?

A. No, because I'm under oath and I don't remember for sure.

(Tarpley depo. at 58-59).[8]

**{¶ 24}** Given Tarpley's inability to swear that she even touched the handrail, a trier of fact could not reasonably infer (1) that Tarpley did touch the handrail, *and* (2) that the handrail gave way when she touched it because the vertical support was not attached to the metal floor bracket, *and* (3) that the handrail giving way caused Tarpley to lose her balance and trip over the metal bracket. Although this sequence of events is possible, it involves excessive speculation and conjecture. "A probative inference for submission to a jury can never arise from guess, speculation or wishful thinking. The mere happening of an accident gives rise to no presumption of negligence." *Parras v. Standard Oil Co.*, 160 Ohio St. 315, 319, 116 N.E.2d 300 (1953); *see also Ganoom v. Zero Gravity Motor Sports, Inc.*, 6th Dist. Lucas No. L-03-1199, 2004-Ohio-4276, ¶7 ("If the plaintiff's quantity or quality of evidence on the issue of proximate cause requires mere speculation and conjecture to determine the cause of the event at issue, then the defendant is entitled to summary judgment as a matter of law.").

---

[8] Although Tarpley believed the metal bracket must have "come out" toward her, the bracket indisputably was bolted firmly to the ground.

**{¶ 25}** For the reasons set forth above, we overrule Tarpley's assignment of error and affirm the trial court's entry of summary judgment in favor of Aldi based on the open-and-obvious doctrine.[9]

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Gary J. Leppla
Philip J. Leppla
Amelia A. Bower
Al A. Mokhtari
Hon. Frances E. McGee

---

[9] Having found that the trial court properly entered summary judgment based on the open-and-obvious doctrine, we need not address Aldi's additional arguments that Crews's affidavit is a "sham" and that Aldi was unaware of any defect. Even taking the affidavit into consideration, as we have done, we believe the trial court properly entered summary judgment for Aldi.